**CASE NO. 25-12951-C**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

DARREN HUNTER

Plaintiff-Appellant,

v.

NETFLIX, INC., et al

Defendants-Appellees.

---

APPEAL FROM AN ORDER
OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

**APPELLANT'S BRIEF**

---

*/s/ Frederick J. Sujat*
Frederick J. Sujat, Esq.
5675 Brookfield Cir E
Fort Lauderdale, FL, 33312
fsujat@yahoo.com
Tel: 954-815-5221

*Counsel for Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Appellant Darren Hunter certifies that the following persons may have an interest in this case:

1. Rebecca Benyamin
2. Yelan Escalona
3. Emily Evitt
4. Rachel Fugate
5. Honorable Nathan W. Hill
6. Darren Hunter
7. Hyperobject Productions
8. Larry Klayman
9. Adam McKay
10. Netflix, Inc.
11. Honorable Gregory A. Presnell
12. Robert Rotstein
13. David Sirota
14. Frederick Sujat

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument, as it will assist the Court and allow for counsel to answer any questions that the Court may have.

*/s Frederick J. Sujat*

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................1

STATEMENT OF THE CASE ...........................................................1

SUMMARY OF THE ARGUMENT ....................................................10

STANDARD OF REVIEW ...............................................................10

ARGUMENT ...............................................................................11

    Appellant More Than Sufficiently Pled Copyright Infringement.................11

        The Movie is Substantially Similar to the Book.................................13

    Appellant's Claim for False Advertising Under the Lanham Act Is Properly Pled.......................................................................................19

    Appellant's State Law Claims Are Not Preempted By Section 301 Of The Copyright Act.............................................................................21

CONCLUSION ...........................................................................23

# TABLE OF AUTHORITIES

## Cases

*Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302 (S.D. Fla. 2008) ....... 23

*Anand Vihar LLC v. Evans Grp., Inc*, 2017 U.S. Dist. LEXIS 110369 (M.D. Fla. July 17, 2017) ................................................................................. 12

*Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560 (M.D. Fla. 1995) .. 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (U.S. 2009) ............................................. 10

*AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349 (S.D. Fla. 2009) ................................................................................. 10, 13

*Bateman v. Mnemonics, Inc.*, 79 F.3d 1532 (11th Cir. 1996) ............................... 12

*Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007) ...................................... 1, 11

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129 (11th Cir. 2007) ......... 12

*Dastar Corp. v. Twentieth Century Fox Film, Corp.*, 539 U.S. 23 (2003) . 19, 20, 21

*Dershowitz v. Cable News Network, Inc.* 541 F. Supp. 3d 1354 (S.D. Fla. 2021).. 11

*Dorleus v. Bank of New York*, 2014 WL 1621941 (S.D. Fla. Apr. 23, 2014) ......... 10

*Georgia v. Pub..Resource.Org, Inc.*, 590 U.S. 255 (2020) ................................. 13

*Gwynn v. Rabco Leasing, Inc.*, 2010 U.S. Dist. LEXIS 45215 (M.D. Fla. Apr. 2, 2010) ................................................................................. 13

*Gutierrez v. Sullivan*, 338 So. 3d 971 (Fla. Dist. Ct. App. 2022) ........................ 22

*Herzog v. Castle Rock Entm't*, 193 F.3d 1241(11th Cir. 1999) ........................ 11, 12

*Joye v. Sec'y Dep't of Navy*, 736 F. App'x 861 (11th Cir. 2018) ........................... 10

*M. Arthur Gensler Jr. & Assocs. v. Strabala*, 764 F.3d 735 (7th Cir. 2014) .......... 21

*Patrick v. Poree*, No. 23-12732, 2023 U.S. App. LEXIS 33078 (11th Cir. Dec. 14, 2023) ................................................................................. 13

*Waste Pro USA v. Vision Constr. ENT, Inc.,* 282 So. 3d 911 (Fla. Dist. Ct. App. 2019) ................................................................................. 22

## Statutes

28 U.S.C. § 1291 ................................................................................. 1

17 U.S.C. § 301(a) ................................................................................. 21

## JURISDICTIONAL STATEMENT

The basis for the U.S. Court of Appeals for the Eleventh Circuit's jurisdiction is pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment that disposes of all of the Appellant's claims.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Did the District Court granting Appellees' Motion to Dismiss? ECF No. 51.

## STATEMENT OF THE CASE

This action is centered around the Appellees having copied constituent elements of Appellant Darren Hunter ("Mr. Hunter") original book titled "*The Million Day Forecast*" (the "Book[1]") in their movie, *"Don't Look Up"* (the "Movie") without Mr. Hunter's authorization or consent.

In this action, the Lower Court erred by ignoring the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007), and instead imposing a much higher standard that is simply put, not required, at this stage of the litigation. In having improvidently taken it upon itself to independently review the Book and Movie beyond what was pled in the Complaint and then dismissing this

---

[1] The Book also had a sequel also which shared parts of the title *The Million Day Forecast*. The sequel was titled *The Million Day Forecast and the Dark Exoplanet*. (the "Sequel"). For the purpose of this response, when discussing the substantial similarities between the Book and the Movie, both the original book and the sequel are referenced together as the Book.

action, the Lower Court usurped the role of the trier of fact—the jury. The bottom line is that Appellant satisfied the pleading standard, and as such, this matter should have gone to discovery, which would have confirmed and augmented the well pled allegations of the Complaint.

The Complaint sets forth in detail the multitude of literary constituent elements from the Book that copied by the Movie, which indisputably was released well after the Book was published and registered with the U.S. Copyright Office. Comp. ¶ 22.[2]

As set forth in detail below, these substantial similarities include, but are not limited to, the following character similarities:

> **Protagonists:** Emma Hayes, of the Book, and Kate Dibiasky, of the Movie, are both young, determined female protagonists who face significant challenges in convincing others of an existential threat. Their struggles reflect broader themes of scientific communication and societal response to impending disasters.
> **Advisors/Experts:** Srenyi and Dr. Randall Mindy provide scientific authority and credibility for the protagonists' claims, reinforcing the urgency of the threats they face.
> **Authority Figures:** President Emma Hayes and President Janie Orlean both make inspirational speeches calling for unity in the face of a global threat, each addressing political opposition and rallying public support. Comp. ¶ 30.

---

[2] The Book also had a sequel also which shared parts of the title *The Million Day Forecast*. The sequel was titled *The Million Day Forecast and the Dark Exoplanet*. (the "Sequel")

Notably, the Complaint even provided the Lower Court with a chart meticulously detailing the elements of the Movie which were copied from the Book. Comp. ¶ 30.

| The Million Day Forecast (2015 & 2017) | Don't Look Up (December 5, 2021) |
|---|---|
| *Themes* | *Themes* |
| Apocalyptic, political satire, dark comedies, climate change and unconcerned populace.<br><br>Themes of science communication, government response, and societal reaction to existential threats, often highlighting skepticism and the difficulty of mobilizing collective action in the face of imminent danger. | Apocalyptic, political satire, dark comedies, climate change and unconcerned populace.<br><br>Themes of science communication, government response, and societal reaction to existential threats, often highlighting skepticism and the difficulty of mobilizing collective action in the face of imminent danger. |
| *Characters* | *Characters* |
| Emma Hayes young, determined female protagonists who face significant challenges in convincing others of an existential threat, and their struggles reflect broader themes of scientific communication and societal response to impending disasters.<br><br>Both protagonists navigate complex relationships with those around them, including colleagues, authorities, and the public. These dynamics are critical in their efforts to communicate the threat and | Kate Dibiasky young, determined female protagonists who face significant challenges in convincing others of an existential threat, and their struggles reflect broader themes of scientific communication and societal response to impending disasters.<br><br>Both protagonists navigate complex relationships with those around them, including colleagues, authorities, and the public. These dynamics are critical in their efforts to communicate the threat and mobilize action<br><br>There is a strong sense of urgency in both |

| The Million Day Forecast (2015 & 2017) | Don't Look Up (December 5, 2021) |
|---|---|
| mobilize action<br><br>There is a strong sense of urgency in both stories. Emma races against time with a long-term disaster forecast, while Kate deals with the immediate threat of a comet strike. Both timelines create intense pressure and drive the narrative forward.<br><br>Srenyi is an alien who informs Emma about the impending disaster, acting as a mentor and guide.<br><br>Both characters provide the scientific basis and credibility for the protagonists' claims, reinforcing the urgency of the threats they face. | stories. Emma races against time with a long-term disaster forecast, while Kate deals with the immediate threat of a comet strike. Both timelines create intense pressure and drive the narrative forward.<br><br>Similarly, Dr. Randall Mindy, a professor and astronomer, supports Kate Dibiasky's discovery and helps her in their mission to alert the world.<br><br>Both characters provide the scientific basis and credibility for the protagonists' claims, reinforcing the urgency of the threats they face. |
| *Plot and Sequence* | *Plot and Sequence* |
| Emma is an advanced astrophysics student who discovered that a cluster of space rocks is on a collision course (or is "hurtling")  to destroy earth.<br><br><br>The "clusters" are akin to comets and can destroy Earth. | Kate is an advanced astrophysics student who discovered that a comet is on a collision course or is "hurtling") to destroy earth. |
| Emma attempts to contact NASA. | Kate attempted to contact Nasa. |
| Emma makes a public warning on Youtube. | Kate made a public warning on TV talk show called "The Daily Rip." |
| Emma makes warnings and pleads with an apathetic public. There's immediate frustration caused by the meanness she encounters and that no | Kate makes warnings and pleads with an apathetic public. There's immediate frustration caused by the meanness she |

| The Million Day Forecast (2015 & 2017) | Don't Look Up (December 5, 2021) |
|---|---|
| one understands. | encounters and that no one understands. |
| Emma is disbelieved and promptly go on viral with demeaning hashtag i.e. #SpaceRabbitGirl | Kate is disbelieved and promptly go on viral with demeaning hashtag i.e. #BlameKate |
| Emma is called crazy and is ridiculed the next day at school. | Kate is called crazy and is ridiculed the next day at school. |
| Emma is detained by government agents. She becomes hostile while being restrained. She knows it's all about money. | Kate is detained by government agents. She becomes hostile while being restrained. She knows it's all about money. |
| Emma is offered a deal for freedom in exchange for signing a contract to remain quiet regarding the threat from space. Emma maintains her sense of humor while being detained. Mental illness is mentioned. | Kate is offered a deal for freedom in exchange for signing a contract to remain quiet regarding the threat from space. Kate maintains her sense of humor while being detained. Mental illness is mentioned. |
| Emma is transported by a white van to or from her parent's house before or after detainment. Emma's parents don't believe her and there's tension. Emma's mom says, "We think it's best if you go away for a few days." | Kate is transported by a white van to or from her parent's house before or after detainment. Kate's parents don't believe her and there's tension. Kate's dad says, "We don't want more of it in our house." |
| President Emma Hayes makes an inspirational speech calling for unity while a solution is created by scientists. She makes this speech to rally people to the plans for handling the coming clusters due to staunch political opposition. Thousands travel to Washington to watch the speeches. In her speech, she | President Janie Orlean makes an inspirational speech calling for unity while a solution is created by scientists. She makes this speech to rally people to the plans for handling the coming comet due to staunch political opposition. Thousands travel to Washington to watch the speeches. In her speech, she mentions global/word "citizens", "military", and the |

| **The Million Day Forecast (2015 & 2017)** | **Don't Look Up (December 5, 2021)** |
|---|---|
| mentions global/word "citizens", "military", and the need for everyone to come together.<br><br>Emma Hayes becomes the first female president of the United States. Her political opponent is congressman Mitch Grayson. | need for everyone to come together.<br><br>President Orlean is the female president of the United States. Her political opponent is Senator Jeff Lemer. |
| Technologist Dr. Soren suddenly has the original solution canceled in favor of a new plan that would benefit him financially. Plan involves particle accelerator technology from CERN Large Hadron Collider in Geneva. | Technologist Dr. Peter suddenly has the original solution canceled in favor of a new plan that would benefit him financially. . Plan involves particle accelerator technology from CERN Large Hadron Collider in Geneva. |
| Dr. Soren controls the president (President Grayson at this point).<br><br>"You're going to do exactly as we say to do. Do I make myself perfectly clear?"<br><br>President Grayson: "Yes, sir, exactly as I'm told."<br><br>Dr. Soren: "Shut up Grayson! You need to learn to let me do the thinking around here."<br><br>President Grayson: "I'm so sorry Dr. Soren." | Dr. Peter controls president Orlean.<br><br>"Janie, now!"<br><br>President Orlean: "Yes, Peter, here I come. I'm so sorry! I'm so sorry, Peter!" |

| The Million Day Forecast (2015 & 2017) | Don't Look Up (December 5, 2021) |
|---|---|
| Dr. Soren builds a spacecraft that travels to an exoplanet. | Dr. Peter builds a spacecraft that travels to an exoplanet. |
| Dr. Soren orders a new plan – he orders the abandonment of the mission to create a quantum bridge in favor of a plan to blow up the clusters into pieces because he stood to gain financially due to his partnership with an alien named Enyak. (p.81) | Dr. Peter orders a new plan – he orders the initial mission to destroy the comet to be turned around because the opportunity to make money from mining the comet. |
| Huge crowds take to the streets on either side of the debate and use competing slogans for and against Emma's appeal to save humanity.<br><br>The two competing sides are represented by those who back Emma and her mission to build a Quantum Bridge and supporters of President Mitch Grayson, and Dr. Soren, and their plan to deflect the space rock clusters. | Huge crowds take to the streets on either side of the debate and use competing slogans for and against Kate's appeal to save humanity.<br><br>The two competing sides are represented by supporters of Kate, and Dr. Mindy, and their plan to destroy the comet, and supporters of President Janie Orlean and Dr. Peter and their sudden decision to mine the approaching comet. |
| Division in society – National Guard units separated the two sides. Supporters of Emma gathered in a Sports Arena. | Division in society – National Guard units separated the two sides. Supporters of Kate and Mindy gathered in a sports arena. |
| War veteran launched into space – Captain Somers was singled out during President Emma Haye's speech. | War veteran launched into space – Colonel Drask was singled out during President Orlean's speech |

| The Million Day Forecast (2015 & 2017) | Don't Look Up (December 5, 2021) |
|---|---|
| "Emma took the opportunity to smile and wave at Somers… who was seated in an honorary presidential box." | "Commander Drask, this is your president speaking. Your nation thanks you, and I thank you." |
| The masses care more about pop culture.<br><br>"So you mean we're all supposed to sit around and watch mindless crap like reality TV and pretend that giant clusters aren't going to destroy our planet?" | The masses care more about pop culture.<br><br>"Social media is just going on and on about that singer Riley Bina and DJ Chello breaking up."<br><br>"Diddy just exploded, and so did Vroom. BASH just sent me eight notifications."<br><br>"You can see this spike here is when Riley Bina asked to take DJ Chello back on the segment before you." |
| An alien attacks Emma on an exoplanet. | An alien attacks Janie on an exoplanet. |
| President Emma Hayes enjoys smoking. Both Presidents state that they can now smoke in public because they are the President. | President Orlean enjoys smoking. Both Presidents state that they can now smoke in public because they are the President. |

In summary, these substantial similarities also include, but are not limited to, the

following plot and sequencing similarities: (1) Both Emma and Kate discover a

celestial threat—clusters of space rocks in Emma's case and a comet in Kate's; (2) Both make public warnings—Emma on YouTube and Kate on a TV talk show; (3) Both are disbelieved, ridiculed, and detained by government agents, facing frustration from an apathetic public; (4) Both are offered deals for their freedom in exchange for silence about the space threat, with mental illness mentioned.; (5) Both face skepticism from their parents and tension at home; (6) Both Presidents make speeches to rally people around scientific solutions, with political opponents creating additional hurdles; (7) Both technologists cancel original plans in favor of financially beneficial alternatives involving advanced technology from CERN; (8) Both Presidents travel to an exoplanet where an alien creature attacks them. Comp. ¶ 30.

Lastly, these substantial similarities also include, but are not limited to, the following common themes: (1) apocalyptic political satire and dark comedy; (2) the difficulty of mobilizing collective action in the face of imminent danger; and (3) skepticism and the challenges of communicating scientific threats. Comp. ¶ 30. This is set forth in detail in the extremely specific chart in the Complaint, Comp. ¶ 30, as well as in Appellant's Response in Opposition to Defendant Netflix's Motion to Dismiss, which is incorporated herein by reference. ECF No. 28. Given these substantial similarities between the Book and Movie, it is reversible error for the Lower Court to have granted the Appellees' Motion to Dismiss.

This is particularly true given that the factually intensive issues raised by Appellees in their motion to dismiss needed to have been decided by the trier of fact—the jury. It is also well established that such questions of fact are not properly decided on a motion to dismiss, and this matter must go to discovery and trial before it can be resolved.

## SUMMARY OF THE ARGUMENT

The Lower Court erred in granting the Appellees' Motion to Dismiss because Appellants has more than sufficiently pled claims for copyright infringement, under the Florida Deceptive Unfair Trade Practices Act, the Lanham Act, and for Unjust Enrichment.

## STANDARD OF REVIEW

The standard of review for an order granting a motion to dismiss is *de novo*. *Joye v. Sec'y Dep't of Navy*, 736 F. App'x 861, 863 (11th Cir. 2018).

A motion to dismiss is designed to test the legal sufficiency of a complaint and not to determine any factual issues. *Dorleus v. Bank of New York*, No. 14-80124-CIV, 2014 WL 1621941, at *2 (S.D. Fla. Apr. 23, 2014). All allegations of the complaint must be taken as true and all reasonable inferences drawn therefrom must be construed in favor the non-moving party. *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. See Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007).

Finally, when considering a FRCP 12(b)(6) motion, trial courts are limited to the four corners of the complaint and may only consider documents incorporated in the complaint—i.e., either documents attached to the complaint or documents which do not allege acts extrinsic to the pleadings. *Dershowitz v. Cable News Network, Inc.* 541 F. Supp. 3d 1354, 1360-61 (S.D. Fla. 2021).

## <u>ARGUMENT</u>

The Lower Court erred in granting the Appellees' Motion to Dismiss because Appellants' Complaint more than sufficiently pled a claim for copyright infringement, as well as for False Advertising under the Lanham Act, for unjust enrichment, and for relief under Florida's Deceptive and Unfair Trade Practices Act.

## I.    **Appellant More Than Sufficiently Pled Copyright Infringement**

"To state a claim for copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the

work that are original.'" *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247-48 (11th Cir. 1999). As set forth herein, both elements are met. Appellant has alleged a valid copyright, *see also* <u>Exhibit A</u>, and that Defendants' Movie is substantially similar to his copyrighted Book.

Appellees did not argue that they did not have access to the Book for the purpose of this appeal, the only question before the Court is whether the Book and Movie are "substantially similar."

"[I]n general, the standard for copyright infringement is 'substantial similarity'…This standard occupies a non-quantifiable value on the legal spectrum between no similarity and identicalness." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1147-48 (11th Cir. 2007) (internal citations omitted). Importantly, it is well-settled that "[t]wo works need not be identical in order to be deemed 'substantially similar' for purposes of copyright infringement." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1543 n.25 (11th Cir. 1996). "Substantial similarity exists '"where an average lay observer would recognize the alleged copy as having been appropriated from the [protectable features of the] copyrighted work."' *Anand Vihar LLC v. Evans Grp., Inc.*, No. 8:16-cv-841-T-27TBM, 2017 U.S. Dist. LEXIS 110369, at *6 (M.D. Fla. July 17, 2017).

Crucially, "it is the presence of substantial similarities . . . rather than differences which determines whether infringement exists. 'The existence of

differences will not negate infringement unless they so outweigh similarities that the similarities can only be deemed inconsequential within the total context of [the copyrighted] work.'" *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560, 1568 (M.D. Fla. 1995).

### a. The Movie is Substantially Similar to the Book

As a threshold matter, the Lower Court erred in finding that the Sequel was not registered with the U.S. Copyright Office. The U.S. Copyright registration set forth in Comp. ¶ 22, registration number TXu002396788 covers both the original book as well as its sequel. In finding that Appellant's copyright registration for the Sequel was insufficient, the Lower Court failed to "take[] as true" all of the facts pled in the Complaint. *AXA Equitable Life Ins. Co,* 608 F. Supp. 2d at 1353. Furthermore, it is also clear that "[t]itle 17, United States Code, Section 408, states 'clearly' that 'registration is not a condition of copyright protection.'" *Gwynn v. Rabco Leasing, Inc.*, 2010 U.S. Dist. LEXIS 45215, at *14 (M.D. Fla. Apr. 2, 2010). "Unlike other forms of intellectual property, copyright protection is both instant and automatic. It vests as soon as a work is captured in a tangible form." *Georgia v. Pub..Resource.Org, Inc.*, 590 U.S. 255, 275 (2020). *See also Patrick v. Poree*, No. 23-12732, 2023 U.S. App. LEXIS 33078, at *5-6 (11th Cir. Dec. 14, 2023) ("Copyright registration is not necessary for copyright interests to vest…. Poree and Sherman's rights as authors vested *before* the registration rather than

coming from the registration.") Thus, Appellant properly sued on both the Book and the Sequel.

In granting the Appellees' Motion to Dismiss, the Lower Court, in a wholly conclusory manner, asserted that

> … similarities listed in Plaintiff's chart stem from broad uncopyrightable ideas that are typical of works that center around the Earth's destruction: the protagonist is the first to learn and warn the public about a celestial threat, the public is in disbelief upon learning about the threat, and the populace attempts to find a solution for such a threat. Moreover, the similarities between these works are at the broadest levels, i.e., the similarities between the protagonists are limited to their female gender and the similarities between the settings to scenes taking place in the United States." ECF No 51 at 11 – 12.

This over-generalized approach simply "glosses over" the vast majority of the meticulously detailed elements from the Book which are copied by the Movie, which include:

**_Plot and Sequence of Events_**. The Book and Movie both have substantially similar plot and sequencing. _First_, both young female protagonists discover that there are celestial objects on a collision course for Earth which would destroy Earth upon impact. _Second_, both young female protagonists attempt to contact NASA after this discovery. _Third_, both young female protagonists make public warnings about the looming threat in an attempt to "mitigate the impact of the [celestial threat]." _Fourth_, both young female protagonists' warnings are ignored by an apathetic public, leading to frustration that no one else understands. _Fifth_,

both young female protagonists are disbelieved and go viral on social media with demeaning hashtags (#SpaceRabbit Girl and #BlameKate). *Sixth*, both young female protagonists are called crazy and subsequently ridiculed at school. *Seventh*, both young female protagonists are detained by government agents. *Eighth*, both young female protagonists are offered deals in exchange for remaining quiet about the looming threat. *Ninth*, both young female protagonists are disbelieved and rejected by their parents. *Tenth*, in both the Movie and Book, there is a plan set in motion to save Earth from the looming celestial threat. *Eleventh*, in both the Movie and Book, the plan to save Earth from the looming celestial threat is cancelled in favor of an alternative plan that financially benefits the person controlling the President of the United States of America (Dr. Soren in the Book and Peter Isherwell in the Movie). *Twelfth,* the new proposed solutions in both the Book and Movie involve the Large Hadron Collider located at CERN; *Thirteenth*, in both the Book and Movie, this results in division and mass protests in society. *Fourteenth*, in both the Book and Movie, the presidents travel to an exoplanet and are attacked by aliens (Emma in the Book and Janie Orlean in the Movie). Comp. ¶ 30.

Any minute distinctions between the Book and Movie asserted by the Appellees are not even close to sufficient to outweigh the substantial similarities under. *Maloney*, 891 F. Supp. at 1568. For instance, Appellees in their motion to dismiss attempted to argue that the celestial threat in the Movie is a comet and the

celestial threat in the Book is a "cluster" of space rocks. This is truly a distinction without a difference, particularly given that comets are made up, in part, of rocks.[3] Accordingly, none of the small distinctions set forth by Defendants are remotely sufficient enough to overcome the overwhelmingly similar plot and sequences between the Book and Movie.

***Theme and Mood***. The themes and mood of the Book and Movie are identical. As set forth in the Complaint, both the Movie and the Book share the "themes of apocalyptic political satire, dark comedy, and the challenges of mobilizing collective action in the face of imminent danger." Comp. ¶ 37. Specifically, both the Movie and Book serve as warnings against society placing financial interests over directly addressing looming existential threats, in both cases, being an allegory to climate change and a rebuke against those who choose to ignore it for their own immediate personal benefits. Comp. ¶¶ 34 – 36. The comet functions as a metaphor for climate change similarly in both works. As the story unfolds, there is less and less time to deal with the reality of the comet/climate change's inevitability if immediate action is not taken. Appellee McKay repeatedly stated that the Movie was a metaphor for climate change. The tagline on the cover of the Movie is " There's a dramatic change ahead in the

---

[3] https://science.nasa.gov/solar-system/comets/#:~:text=Comets%20are%20frozen%20leftovers%20from,be%20larger%20than%20a%20planet.

forecast." Furthermore, both the Book and Movie both aim to provide commentary on society's obsession with pop culture and social media to the extent that people would ignore extinction level events in favor of pop culture and social media. Comp. ¶ 30.

The overarching themes and the message that both the Book and Movie attempt to deliver are identical. A few minute distinctions asserted by Appellees in their motion to dismiss in the ways that the Book and Movie choose to deliver these identical themes and messages cannot overcome their overwhelmingly similarities.

***Characterization***. There is substantial similarity between the two protagonists in the Book and Movie. Emma and Dibiasky are both young females. They are both students in the same field, with Emma being an "advance placement astrophysics student" and Dibiasky being a doctoral candidate in astrophysics at Michigan State. Both discover existential celestial threats which will destroy Earth. Both try to warn the public and both are ignored and portrayed as being crazy. Comp. ¶ 30. In their motion to dismiss, Appellees point out a minute difference—namely that Emma is a high school student and Dibiasky is a doctoral student. However, the bottom line is that both are still students in the same field, and such minute differences do out outweigh the litany of substantial similarities.

*Furthermore*, both the Book and Movie have "mentor" characters that provide guidance to the younger female protagonists. In the case of the Book, it is Srenyi of planet X7gTH5 and in the case of the Movie, it is Dr. Mindy. Defendant Netflix tries to argue a lack of similarity due to the appearance of the characters, with Srenyi obviously being an alien. This, however, ignores the fact that Srenyi is a character in a book and Dr. Mindy is a character in a move played by Leonardo DiCaprio. It is impossible to draw parallels between the characters' appearances where the mediums are so different. The substantial similarly between Srenyi and Dr. Mindy lies in the <u>function</u> that both characters serve, namely to "provide scientific authority and credibility for the protagonists' claims" Comp. ¶ 30.

Other similar characters exist, such as decorated war veteran Captain Somers in the Book and Colonel Drask in the Movie. Both war veterans are launched into space. Comp. ¶ 30. Both the Book and Movie feature self-serving presidents of the United States, President Grayson and President Orlean, who are beholden and controlled by more powerful figures who are acting in their own self interest—Dr. Soren in the Book and Peter Isherwell in the Movie.

***Setting***. Both the Movie and the Book take place predominantly in the United States of America and both involve threats from outer space. Both Emma's and Dibiasky's respective schools are featured. Also, in both the Book and the

Movie, the characters travel to an exoplanet where they are attacked by aliens. Comp. ¶ 30.

**Pace.** Defendants conflates the period of time before the extinction event in the Book—one million days—with the pace of the Book. Just like in the Movie, the events of the Book are resolved quickly. Emma zealously tries to warn the world of the urgency to begin building a solution immediately because she's been informed that humans must begin work immediately on this "precise" day or will be extinct. In the Book, she states, "[w]e don't have any time to waste."

Furthermore, the Movie also involves events in the far future where President Orlean, Peter Isherwell and others arrive on an exoplanet.

**Dialogue**. There exists a litany of substantially similar in the dialogue in the Book and Movie. For instance, in both the Book and Movie, the presidents (President Emma and President Orlean) state that they can now smoke in public because they are president. Comp. ¶ 30.

Accordingly, in sum, there exists more than substantial similarity between the Book and the Movie in every single pertinent element that could have been considered by the Lower Court. It was an error for the Lower Court to, in a conclusory fashion, simply "gloss over" the litany of substantial similarities in order to find that, "The similarities listed in Plaintiff's chart stem from broad

uncopyrightable ideas that are typical of works that center around the Earth's destruction." ECF No. 51 at 11.

## II. Appellant's Claim for False Advertising Under the Lanham Act Is Properly Pled

The Court erred in finding that Appellant's claim for false advertising under Section 43(a) of the Lanham Act is precluded by *Dastar Corp. v. Twentieth Century Fox Film, Corp.*, 539 U.S. 23 (2003). This argument fails because *Dastar* is distinguishable from the facts at issue and there are multiple Courts which have found under similar facts to the ones at issue that claims under the Lanham Act are not precluded.

In *Dastar*, the Court found that a claim for "false designation of origin" under the Lanham Act was precluded when the producer Dastar copied and edited a documentary series originally produced by Fox – who had failed to renew the copyright and allowed it become part of the public domain – and subsequently manufactured and sold the documentary as it won product. *Id*. at 26. The Court decided this issue under its interpretation of the meaning of the phrase "origin of goods" for reverse passing off claims, *id*. at 38, but this issue is not present here. Thus *Dastar* is distinguishable because (1) unlike *Dastar*, which included expired copyrights, the copyrights here are valid, (2) Appellant's claim is for "false advertising" and not "false designation of origin" and (3) Appellant's claim involves a tangible item—the Book—whereas *Dastar* involved only film.

The Lower Court's reasoning that Appellants' claims are foreclosed by *Dastar* because the "false advertising claims relate to the misrepresentation of the movie's authorship, not production" is erroneous because it plainly misstates the Appellant's argument. Appellant never claimed that the script for the Movie was not written Appellees McKay and Sirota. Appellant's claim was that the script of the Movie, without authorization or consent, copied constituent elements of the Book. It is therefore the "nature, characteristics, or qualities" of the Movie and Book that are misrepresented by the Appellees.

The Court must consider *M. Arthur Gensler Jr. & Assocs. v. Strabala*, 764 F.3d 735 (7th Cir. 2014), the U.S. Court of Appeals for the Seventh Circuit held that where an architectural firm (Gensler) contended that a former employee (Strabala) "made a "false or misleading representation of fact" (his role in designing the five buildings) that is "likely to ... deceive as to the ... connection[] or association of such person [Strabala] with another person [Gensler]" and to deceive clients about the "origin" of the designs," such a claim was not precluded by *Dastar*. *Id*. at 737. The facts here are nearly identical, aside from an employee-employer relationship. Appellant has alleged that Appellees "made a false or misleading representation of fact" that is "likely to deceive" consumers about the "origin" of the Movie.

**III.    Appellant's State Law Claims Are Not Preempted By Section 301 Of The Copyright Act**

The Court erred by finding that attempts to argue that Appellant's state law claims for unjust enrichment and under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") are precluded by Section 301 of the Copyright Act.

17 U.S.C. § 301(a) states that the Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." This argument fails, however, for the reason admitted by Defendant Netflix in its motion. Such preemption does not occur so long as the state law claim requires an "extra element" for recovery that makes the action qualitatively different from the copyright claim. Both of Appellant's state law claims clearly contain the requisite "extra element."

Under Florida law, unjust enrichment requires that the "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Gutierrez v. Sullivan*, 338 So. 3d 971, 973 (Fla. Dist. Ct. App. 2022). Thus, unjust enrichment requires analysis into the equities of the situation. It must be determined that it would be "inequitable" for the Defendants to retain the benefit without compensating the Plaintiff. Such an analysis is not required under the Copyright Act and thus, unjust enrichment is

clearly not precluded as it is substantially different from any claim brought under the Copyright Act.

Similarly, Appellant's claim under the FDUTPA is not precluded by the Copyright Act because any claim under the FDUTPA requires "a deceptive act or unfair practice." *Waste Pro USA v. Vision Constr. ENT, Inc.,* 282 So. 3d 911, 917 (Fla. Dist. Ct. App. 2019). Furthermore, the "FDUTPA requires that its provisions "be construed liberally" to, <u>inter alia,</u> "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1305 (S.D. Fla. 2008). On the other hand, a claim under the Copyright Act clearly does not require a "deceptive act or unfair practice." Thus, Appellant's claim under the FDUTPA, which is to be liberally and broadly construed in any event under Florida state law, is not precluded as it is entirely distinct from his claim under the Copyright Act.

## <u>CONCLUSION</u>

Based on the foregoing, the Court must reverse the Lower Court's order granting Appellees' Motion to Dismiss. ECF No. 51. Appellant has more than pled what he need to plead at the initial motion to dismiss stage, and the Lower Court

erred by improperly reaching outside of Appellant's Complaint. This error must be reversed and this matter remanded for further proceedings.

Dated: December 23, 2025                    Respectfully Submitted,

                                            */s/ Frederick J. Sujat*
                                            Frederick J. Sujat, Esq.
                                            5675 Brookfield Cir E
                                            Fort Lauderdale, FL, 33312
                                            fsujat@yahoo.com
                                            Tel: 954-815-5221

                                            *Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 5,583 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 15.28 in 14-point Times New Roman.

Dated: December 23, 2025                    */s/ Frederick J. Sujat*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 23, 2025, the foregoing was served on counsel  for Appellees through the Court's ECF system.


<u>/s Frederick J. Sujat</u>